THOMAS S. HARLOW *vs.* NATHAN TUFTS, JR., & another.

This court have jurisdiction, under the general supervisory power conferred upon them in matters of insolvency by *St.* 1838, *c.* 163, § 18, to revise the proceedings of a judge of probate, master in chancery, or commissioner in insolvency, under the *St.* 1846, *c.* 168, § 1, against persons charged with fraudulently embezzling, or disposing of any of the estate of an insolvent debtor.

The purpose of *St.* 1846, *c.* 168, § 1, authorizing proceedings against any person sus-pected of having fraudulently received, &c., any of the estate of an insolvent debtor, is intended not only to provide for the investigation of cases of actual fraud, in which the property of an insolvent is obtained without consideration, but also to enable creditors or those interested to discover and pursue property, which is so

withdrawn from the assets of the insolvent, that it cannot be applied in satisfaction of 1 is general creditors.

The provisims of *St.* 1846, *c.* 168, § 1, authorizing proceedings "against any one suspected if having fraudulently received, concealed, embezzled, or conveyed away any of the money, goods, effects, or other estate" of an insolvent debtor, extend to fraudulent conveyances of real estate.

THIS was a petition, under the general jurisdiction of this court in matters of insolvency, by the assignee of Alexander Gregg, an insolvent debtor, in the nature of an appeal from an adjudication of the judge of probate for this county, before whom the proceedings in insolvency were pending.

The petitioner presented a petition to the judge of probate, setting forth that he was the assignee of the said insolvent; that on the 31st of December, 1847, within six months previous to the filing of his petition for the benefit of the insolvent law, the insolvent sold and conveyed to Nathan Tufts, Jr., and Gilbert Tufts, Jr., the respondents, his equity of redemption in a certain lot or parcel of land particularly described in the petition; that the consideration named in the deed was $1200, which, with the sum of $800, for which the estate was previously mortgaged to James Russell, was the value of the same; that the conveyance was fraudulent and void as to creditors, and was made by the insolvent to hinder, delay and defraud his creditors, and particularly to prevent Henry L. Stearns, a creditor of the insolvent, from levying the execution, which might issue on a judgment about to be obtained by him, on the said land; that, at the time when the conveyance was made, to the said Nathan and Gilbert, the insolvent was indebted to them on an account, and had previously given them a note, which they had indorsed and procured to be discounted, but of which they were not then the owners, and which did not become due until more than a month after the conveyance was made; that the grantees, at the time of the conveyance, had reasonable cause to believe the grantor insolvent, and had no reasonable cause to believe him solvent; that they took the conveyance for the purpose of securing to themselves a preference over the insolvent's other creditors, in the pay-.nent of their debt and liability aforesaid, and for the purpose

38 *

of hindering, delaying and defrauding such other creditors that the grantees still held and retained the said estate ; and that many of the facts set forth in the petition, and more particularly those which relate to the knowledge and intention of the grantees, could only be shown through their statements. The petitioner therefore prayed, that the said grantees might be summoned before the judge of probate and required to answer under oath all such questions as might be propounded to them in this behalf, and to be examined under oath upon the matter of the petitioner's complaint.

This petition having been sworn to by the petitioner, and read and considered, together with the matters therein set forth, by the judge of probate, he declined to grant the prayer thereof, on the ground, that the case did not appear to him to be clearly within the meaning and intent of the act of 1846, *c.* 168, § 1, on which the petition was founded.

The petitioner thereupon presented his petition to this court, setting forth more at large the matter of complaint contained in his petition to the judge of probate, together with the proceedings thereon before him. The petitioner, therefore, prayed, that a writ of *subpœna* might be issued to the said grantees, commanding them to appear before this court, or if the court should think fit, before the judge of probate for the county of Middlesex, at such time as the court should appoint, then and there, upon their several and respective oaths, to answer all matters and questions which should be propounded to them, in relation to the said property of the insolvent, and all other matters set forth in the petition ; that they be restrained and enjoined from selling or conveying away the estate, or any part thereof, until the final order of the court ; and that after such hearing, they be required to convey the estate to the petitioner, as the assignee of the grantor, and to account to him for the mesne profits thereof. The petitioner also prayed for all such other and further relief, as, upon a full hearing, he might be found entitled to, and as law and justice might require.

This petition having been sworn to, and notice thereof given to the respondents, they appeared and put in a general demurrer thereto, upon which the case was heard.

*T. S. Harlow,* for himself.

*J. Dana,* for the respondents.

SHAW, C. J.   This is a petition filed by the complainant, as the assignee in insolvency of Alexander Gregg, of Medford, an insolvent debtor.   It is an original petition to this court, in the nature of an appeal from a decision of the judge of probate for this county, before whom such insolvent proceedings are pending.

The petition sets forth the petition presented to the judge of probate, and the matters contained in it, alleges that the judge of probate declined and refused to sustain the petition and grant the prayer thereof, when, in truth, the petition ought to have been sustained and the prayer thereof granted. To this petition, and the notice granted thereon, the respondents have appeared, and put in a general demurrer, which has been argued by counsel.   We think the case presents three questions: 1st. Whether this court have jurisdiction to revise the decision of the judge of probate; 2d. Whether the judge of probate had jurisdiction to entertain and act on the petition; and 3d. Whether, upon the merits, the petitioner was entitled to the relief prayed for.

As to the first question, the court are of opinion, that they have jurisdiction under the original insolvent act, *St.* 1838, *c.* 163, § 18, which gives the court a large and general superintending power and jurisdiction of all cases coming under the act.   In addition to the power of making general rules, it gives the court authority, in all cases not otherwise specially provided for, upon bill, petition or other proper process, of any party aggrieved by any proceedings under the act, to hear and determine the case.   This power was made broad and comprehensive, as we believe, because the legislature were providing a system of very extensive practical operation, and it was manifestly impossible to anticipate and provide for all the particular cases which might arise.   This power has been recognized and acted on, in many cases, a few of which it will be sufficient to cite.   *Wheelock* v. *Hastings,* 4 Met. 504; *Eastman* v. *Foster,* 8 Met. 19; *Barnard* v. *Eaton,* 2 Cush. 294.   The two latter were petitions to revise pro-

ceedings of a judge of probate and master in chancery, and were sustained.

It may be proper, however, to remark, that although the power thus conferred on the court, is general, they will consider, in the exercise of it, the purpose for which it was given, namely, to reach cases not otherwise provided for; and they will probably therefore be slow to exercise it, until other remedies, to be obtained in the ordinary course of proceeding, have been exhausted.

In considering whether the judge of probate had jurisdiction, it is necessary to look at the original petition, in order to determine what was sought. The petition sets forth the insolvency of Gregg, an insolvency commenced on his own voluntary application, made at a time and under circumstances calculated to induce a belief, that an execution was about issuing against him, and for the purpose of defeating such creditor; that within six months previously thereto, the said debtor, being in fact insolvent, and having no reasonable ground to believe himself solvent, had conveyed a valuable real estate to the respondents, with the intent and purpose of giving them security for a preëxisting liability, as indorsers, and in order to give them a fraudulent preference over his general creditors; and that the respondents had no reason, at the time of receiving such conveyance, to believe that Gregg was solvent.

This petition is founded on the provisions of the statute of 1846, *c.* 168, § 1, providing that every judge of probate and master in chancery, before whom an insolvent proceeding is pending, upon complaint on oath, by any person interested in the estate, against any one suspected of having fraudulently received, concealed, embezzled or conveyed away any of the money, goods, effects or other estate of such insolvent, may cite such suspected person to appear before him and be examined on oath, &c., touching such complaint.

It is argued, that this provision was intended only to investigate actual frauds, cases where the property of the insolvent had been obtained without any consideration: but we think the purpose of the act was to enable the creditors

to discover and pursue property, which had been so with-drawn from the assets of the insolvent, that it could not be made applicable to the satisfaction of the general debts, to which it ought to be applied. A preference given in the manner set forth in this petition, by the statute of 1841, c. 124, § 3, is declared void, and the assignees are empowered to recover the value of it. This puts such conveyances on the footing of conveyances under the old statutes, holding them fraudulent as against creditors, and of course void.

Another argument against the allowance of this petition is, that the statute of 1846, c. 168, does not extend to fraudu lent conveyances of real estate. This question is certainly not without difficulty. In the first place, it seems to us, that the reason for this rule is as strong in the case of real estate as of personal. The assignee is certainly a person interested within the words of the statute ; the right to the property is vested in him, in trust for the creditors, and he is their repre-sentative to obtain and apply it. The purpose of the statute seems to be, by a thorough investigation of the case, and an appeal to the conscience of the party suspected, to enable the assignees to judge whether they will proceed to reclaim such property for the general creditors, and to obtain evidence to aid them in prosecuting such claim. But the phraseology of the statute is peculiar. It is, " Any one suspected of hav-ing fraudulently received, concealed, embezzled or conveyed away any of the money, goods, effects, *or other estate*," &c. The term " received," and perhaps the term " concealed," will apply to the obtaining of real estate as well as personal. One who takes an apparently legal title to real estate, which is void in consequence of some secret defect or vice, in com-mon parlance, is said to cover up such estate, or to concea. it. But the more plausible objection lies in the other clause. " money, goods, effects or other estate." There is a common and often a useful rule of construction, that when severa. particulars are named, followed by a more generic term, it is considered, that the more generic term intends only other things *ejusdem generis*, or of the like kind ; so that here we ought to hold, that " other estate " means other estate of like

kind, or personal estate. But we have already observed, that the same reason applies to both real and personal property, from which it may well be inferred that both were intended. But, further, in comparing this clause with that of Rev. Sts. *c.* 65, § 7, respecting the embezzlement of the goods of a deceased person, under the administration of an executor or administrator, the words are identical with those under consideration, except that the words " other estate" are omitted.

Executors and administrators having no direct concern with any other than personal property, the provision was properly limited to money, goods and chattels. But when the same mode of investigating the property of a living insolvent, under the administration of an assignee, for the general benefit of creditors, is provided, whose authority and duty extend as well to real as to personal property, and the legislature, in adopting the former law, and extending it to the payments of a living insolvent, for some purposes, carefully added, after the enumeration of the several kinds of property in the former act, the words " or other estate," the most natural conclusion is, that they intended to include all the property of such insolvent liable to be applied by the assignee to the payment of debts. The language will well bear this construction, and taking the purposes of the statute and the language together, we think it is the true construction. We are therefore of opinion, that the respondents were bound to appear, pursuant to the citation, and answer interrogatories touching said supposed fraudulent sale, made in the manner set forth in the petition.

The petition of the assignee prayed that the judge would pass an order directing the respondents to convey the estate in question to him. Whether the judge of probate had any authority to grant such relief we give no opinion; but we do not think that the right to the discovery prayed for, given by statute, depended on the power of the judge of probate to grant such relief. It was a statute provision of which the assignee was entitled to the benefit, as far as it went, and with which the respondents were bound to comply.